# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-0366V

| | |
|---|---|
| MARVIN WALKER,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: May 24, 2024 |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Alexa Roggenkamp, U.S. Department of Justice, Washington, DC,* for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

  On January 8, 2021, Marvin Walker filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine he received on November 1, 2019. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, Petitioner's Table SIRVA claim must be dismissed. The evidentiary record does not support the conclusion that the requisite onset of pain occurred within 48 hours following administration of the flu vaccine.

## I.  Relevant Procedural History

On March 28, 2023, about 26 months after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation. ECF No. 26. In particular, Respondent argues that Petitioner failed to provide preponderant evidence that the onset of his shoulder pain occurred within 48 hours after his flu vaccination. Rule 4(c) Report at 6-7.

Thereafter, Petitioner filed a Brief in Support of Onset on June 23, 2023. ECF No. 30. Respondent filed a responsive brief ("Resp.") on July 28, 2023. ECF No. 31.

The matter is now ripe for adjudication.

## II.  Relevant Factual History

### A. Medical Records

Petitioner received a flu vaccine in his left deltoid on November 1, 2019, in Athens, Ohio. Ex. 3 at 2.

On March 18, 2020 (four and a half months after vaccination), Petitioner saw his primary care physician ("PCP") for his left shoulder pain. Ex. 4 at 24. The record states that Petitioner reported "pain in left shoulder x 1.5 months." *Id*. (If correct, this would place onset in the winter of 2020 – two to three months post-vaccination). Petitioner reported that he stopped taking his medications because he thought they might be causing the pain. *Id*. Petitioner was referred to an orthopedist and to physical therapy. *Id*. at 26.

A month later, on April 27, 2020, Petitioner saw an orthopedist. Ex. 5 at 40. The records states that "Marvin for about 2-1/2 months has had increasing left shoulder pain." *Id*. at 41. The pain was disrupting Petitioner's sleep. *Id*. The orthopedist assessed "a biceps compensating for a rotator cuff tendon tear left shoulder." *Id*. at 43. A Kenalog injection was administered. *Id*.

Petitioner returned to his orthopedist on June 3, 2020. Ex. 5 at 34. Petitioner reported temporary relief from the injection and slight improvement from physical therapy exercises.[3] *Id*. at 35. An MRI was ordered. *Id*.

---

[3] Petitioner did not file any records of formal physical therapy treatment at that time.

Petitioner saw his PCP on June 16, 2020. Ex. 4 at 18. The doctor recorded in the "subjective" portion of the record: "left shoulder pain – 3-4 months. ROM is affected. Seen ortho – waiting for the MRI – is the same." *Id*.

Petitioner had an MRI on July 6, 2020. Ex. 6 at 61. Petitioner reported that "his arm ha[d] not been right since he was given the flu shot." *Id*. at 64. The reason for the exam was recorded as "left shoulder pain x 4 months." *Id*. The MRI revealed moderate supraspinatus tendinosis with a high-grade partial-thickness tear, mild tendinosis of the infraspinatus and subscapularis tendons, proximal biceps tendinosis, and mild-to-moderate acromioclavicular joint osteoarthritis. *Id*.

Petitioner follow up with his orthopedist on July 15, 2020. Ex. 5 at 24. Petitioner attributed his shoulder pain to his flu shot, stating that "he has never had problems before that." *Id*. at 25. Based on his MRI findings, Petitioner was scheduled for arthroscopic surgery. *Id*. at 27-28.

Petitioner underwent arthroscopic surgery with rotator cuff debridement, distal clavicle resection, subacromial decompression, and limited debridement with open subpectoral biceps tenodesis on July 31, 2020. Ex. 6 at 10. Petitioner continued to treat his post-operative left shoulder through early 2022. Ex. 17 at 14.

On September 23, 2022, Petitioner complained of "L arm weakness onset in 2019 after flu shot reaction to muscle." Ex. 17 at 20. He stated that he "has not had normal strength since," despite his surgery. *Id.* He was referred to physical therapy. *Id.* at 22.

    B. *Affidavit Testimony*

        i. *Petitioner's Declarations*

Petitioner filed three declarations in support of his claim. Ex. 1, 13, 24. In his first declaration, dated January 7, 2021, Petitioner stated that "shortly following the vaccination, [he] developed left shoulder pain. Ex. 1 at ¶5. In his supplemental declaration, dated July 31, 2021, clarified that he developed shoulder pain "in the evening after [his] flu vaccination." Ex. 13 at ¶2. He stated that he "woke up from [his] sleep from the pain and knew that something was not right with [his] shoulder." *Id*. In his second supplemental declaration, dated June 16, 2023, Petitioner added that his "left arm pain continued the next day and as time passed the pain continued." Ex. 24 at ¶5.

Petitioner stated that "within a few weeks" he "thought that the pain might be caused by [his] mediations for diabetes and high cholesterol." Ex. 13 at ¶8. He stopped taking the medications but did not experience relief. *Id*. He explained that previously when he experienced pain after a flu shot, the pain resolved on its own. Ex. 24 at ¶6. He did not know that a flu shot could cause injury "for many months after [his] flu vaccination." *Id*.

3

Petitioner experienced pain between December 2019 and February 2020, "but believed it would improve in time." Ex. 13 at ¶9; Ex. 24 at ¶11. Although he mentioned his shoulder pain to friends and family during this time, he did not mention his flu shot "because [he] did not want to appear dumb." Ex. 24 at ¶7, 10. He recalled his brother-in-law telling him that his shoulder pain after a flu shot lasted for five weeks before resolving. *Id*. at ¶9. But, by "mid-February 2020, [he] decided to see a doctor, but it took time to get an appointment." Ex. 13 at ¶9.

Petitioner also stated that at his first visit with his PCP for shoulder pain on March 18, 2020, he told his doctor that "the shoulder pain had worsened and become more constant in the last 1.5 months." Ex. 13 at ¶10; Ex. 24 at ¶14. He did not mention his flu shot "because [he] did not think it could cause [his] injury and [he] did not want to appear stupid." Ex. 24 at ¶14. Petitioner states that he also told his orthopedist at his first appointment on April 27, 2020, that "in the last 2.5 months [his] left shoulder pain had increased." Ex. 13 at ¶12.

Petitioner did not learn that a vaccination could cause a shoulder injury until mid-June 2020 after a discussion with friends and family. Ex. 24 at ¶15.

   *ii. Witness Declarations*

Patrick C. Thomas, Petitioner's brother-in-law, submitted a declaration dated June 16, 2023. Ex. 19. Mr. Thomas remembered Petitioner telling him about left shoulder pain "in November or December 2019." *Id*. at ¶7. He recalled that Petitioner had mentioned a "flu shot in November of 2019 and that something had not felt right with his left shoulder since." *Id*. at ¶8. He believed that conversation "was about two (2) months after September 21, 2019," which was the day Mr. Thomas had gotten his flu shot. *Id*. Mr. Thomas told Petitioner that he experienced pain after his flu shot, but that it resolved in about five weeks. *Id*. at ¶9.

Sidney Walker, Petitioner's cousin, submitted a declaration dated June 9, 2023. Ex. 20. Mr. Walker recalled that "in the later part of 2019, Petitioner told [him] he was planning on getting a flu shot" and "a few days later," he "complained that something was not right with his left shoulder." *Id*. at ¶8. He recalled that "for months, Petitioner would say that he thought that the pain would go away on its own." *Id*. at ¶10.

Sherry Walker, Sidney Walker's former spouse, submitted a declaration dated June 13, 2023. Ex. 21. Ms. Walker recalled that, "sometime in the later part of 2019," Petitioner told her that he "recently had a flu shot in his left shoulder and that he had a sore shoulder and arm since that shot." *Id*. at ¶6. She remembered primarily using his right arm during the visit and massaging his left shoulder. *Id*.

4

Jodie Tabler, Petitioner's longtime friend, submitted a declaration dated June 7, 2023. Ex. 22. Ms. Tabler noted that Petitioner frequently volunteered to help with her businesses. *Id*. at ¶6. She remembered that "before Thanksgiving in November of 2019," Petitioner told her he was unable to continue helping with her businesses due to his left shoulder pain. *Id*. at ¶8. Ms. Tabler also remembered that Petitioner told her that he "had learned from a friend that vaccinations could cause shoulder injuries like his" and that he "had then realized that the vaccination was the only thing that could have caused his pain being that his pain started the same day he got a flu vaccination in November 2019." *Id*. at ¶13.

Diane Lucas, Petitioner's niece, submitted a declaration dated June 10, 2023. Ex. 23. Ms. Lucas described how she hosted family meals on Saturdays, which are attended by Petitioner. *Id*. at ¶5. She recalled at "one of those Saturday meals in late 2019, that Petitioner told [her] that he had pain in his left shoulder." *Id*. at ¶6. Petitioner told her that he first thought his pain was caused by his medications, but that he had stopped taking them without relief. *Id*. at ¶7. During subsequent weekly meals, Ms. Lucas observed Petitioner having "difficulty picking up drinks and plates with his left arm" so that other family members brought food and drink to him. *Id*. at ¶8. Mr. Lucas also recalled that Petitioner told her that "even though the pain had started immediately after his vaccination, he did not know vaccinations could cause shoulder damage since he had never heard of it happening to anyone before." *Id*. at ¶11.

### III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are

5

internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] ... did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Finding of Fact - Onset

Respondent maintains that Petitioner has not established the required onset for a Table SIRVA because "the contemporaneous medical evidence clearly and consistently places onset of Petitioner's shoulder pain in February 2020." Resp. at 9. Petitioner argues, by contrast, that the records closest in time to vaccination are incomplete on the issue of onset, or confirm that Petitioner experienced the onset of pain within 48 hours of vaccination. Br. at 23-24. He further argues that his own declaration and the declarations of his witnesses provide preponderant evidence that outweighs the one record he argues is ambiguous. *Id*.

While I acknowledge that the standard applied to resolving onset for an alleged Table SIRVA is liberal and will often permit a determination in a petitioner's favor, especially in the *absence* of fairly contemporaneous and direct statements within the petitioner's medical records to the contrary, not every case can be so preponderantly established. Ultimately, the resolution of such fact issues involves weighing different items of evidence against the overall record.

In this case, there *are several* contemporaneous records placing onset well outside the 48 hours period after vaccination and very little evidence supporting Table onset. Three of the medical records closest in time to Petitioner's vaccination consistently establish the onset of Petitioner's shoulder pain as beginning in February to March 2020, several months after his vaccination.

For example, Petitioner's PCP recorded at his March 18, 2020 appointment that Petitioner reported pain in his left shoulder for the past 1.5 months. Ex. 4 at 24. A month later, at his orthopedist appointment, Petitioner reported "for about 2-1/2 months ha[ving] had increasing left shoulder pain," consistent with his reporting one month prior. Ex. 5 at 41. The specific language of that record in fact suggests that the total duration of pain was 2.5 months, with severity increasing during that time. On June 16, 2020, Petitioner returned to his PCP, who recorded "3-4 months" of left shoulder pain, again placing onset around February or March 2020. Ex. 4 at 18. Although Petitioner argues that his descriptions in those records of "increasing left shoulder pain" establishes that his pain was present earlier, the records specifically *refute* this contention. Br. at 24.

The first time Petitioner linked his shoulder pain to his flu shot was during his July 6, 2020 MRI, when he told the technician that "his arm ha[d] not been right since he was given the flu shot." Ex. 6 at 64. Petitioner again attributed his shoulder pain to his flu shot to his orthopedist on July 15, 2020. Ex. 5 at 25. However, those records were created more than six months post-vaccination, after prior records reporting a later onset – and they do not even specifically place onset within 48 hours of vaccination. Petitioner did not

7

again report earlier onset of his shoulder symptoms until September 23, 2022, when he reported that he had experienced left arm weakness with an "onset in 2019 after flu shot reaction to muscle." Ex. 17 at 20. None of these records provide sufficient specificity as to onset to outweigh the earlier records suggesting onset of pain in February or March 2020.

Further, the affidavit testimony offered in this case does not rebut the contemporaneous records. Other than Petitioner himself, none of the witnesses even address pain onset to any sufficient degree. For example, Mr. Thomas recalled Petitioner having shoulder pain "in November or December 2019" and Ms. Tabler recalled learning of Petitioner's pain "before Thanksgiving in November of 2019." Ex. 19 at ¶7; Ex. 22 at ¶8. At best, Mr. Walker recalled that "in the later part of 2019, Petitioner told [him] he was planning on getting a flu shot" and "a few days later," he "complained that something was not right with his left shoulder." Ex. 20 at ¶8.

Certainly, there are situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate, or where the witness statement provides additional detail or amplifies a record silent on a topic. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). But, here, the testimony is not sufficiently consistent nor compelling to outweigh the sequential and contemporaneous medical records.

Finally, Petitioner has attempted to provide credible explanations as to why the contemporaneous records reference dates in February or March 2020. He explained that he did not understand that a flu shot could cause a shoulder injury, that he did not want to appear uneducated, and that he believed his pain would resolve with time. Ex. 13 at ¶9, Ex. 24 at ¶6, 7, 11, 14. But Petitioner's *belief* that his symptoms would resolve with time, or that a flu shot could not cause injury, do not have any impact on the question of *when his pain started*. A claimant might well delay treatment for these reasons, while also able to show (for example, via a first treatment record) that he associated the pain with vaccination. The records do not support this determination. Petitioner also states that he told his first providers that his pain "increased" during the reported timeframes. Ex. 13 at ¶10, 12. However, there is no explanation for why Petitioner would not have mentioned continuous pain over four or five months, even if that pain worsened more recently.

8

Accordingly, I find Petitioner has not preponderantly established that onset of his pain occurred within 48 hours of vaccination – meaning that he cannot proceed in this action with a Table SIRVA claim. In fact, my experience litigating SIRVA claims that "Fall out" of the Table suggests that the onset time most preponderantly supported by the record – some time after January 1, 2020, and hence more than two months post-vaccination – cannot be linked to the vaccine even under a causation theory. Petitioner accordingly should consider dismissal of the claim; otherwise, he will be required to show cause why a non-Table version of such a claim might succeed, given the long post-vaccination onset.

## Conclusion

Because Petitioner has not preponderantly established that the onset of his shoulder pain occurred within 48 hours of vaccination, he cannot proceed in this action with a Table SIRVA claim. Petitioner's Table SIRVA claim is therefore dismissed.

If Petitioner wishes to proceed with a non-Table claim, then on or before **Friday, June 28, 2024,** he shall show cause why such a claim might be viable, articulating his theory of recovery and citing to other Program decisions in which similarly situated claimants have succeeded. Respondent shall thereafter be given the opportunity to oppose the response to the Order to Show Cause.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master